

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>vs.                                                 )<br>)<br>BENNY ALEXANDER,                  )<br>aka JAMES ALEXANDER,         )<br>aka JIM DAVIS                            ) | 08cr 518<br><br>No. 08 CR 518<br>Judge Robert W. Gettleman |

## PLEA AGREEMENT

1.  This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant BENNY ALEXANDER, aka JAMES ALEXANDER, aka JIM DAVIS, and his attorney, DANIEL HESSLER, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2.  The information in this case charges defendant with the theft of government funds, in violation of Title 18, United States Code, Section 641.

3.  Defendant has read the charge against him contained in the information, and that charge has been fully explained to him by his attorney.

4.  Defendant fully understands the nature and elements of the crime with which he has been charged.

## Charge to Which Defendant is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the information. The information in this case charges that the defendant, from in or about February 1989 and continuing to in or about February 2007, at Chicago, in the Northern District of Illinois, Eastern Division, did steal, purloin, and knowingly convert to his own use in excess of $1,000 in funds belonging to the United States, namely, approximately $254,395.79 in funds administered by the Social Security Administration as part of its benefits programs, which funds defendant was not entitled to receive; in violation of Title 18, United States Code, Section 641.

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in the information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

From in or about February 1989 and continuing to in or about February 2007, at Chicago, in the Northern District of Illinois, Eastern Division defendant did embezzle, steal, purloin, and knowingly convert to his own use in excess of $1,000 in funds belonging to the United States, namely, approximately $254,395.79 in funds administered by the Social Security Administration as part of its benefits programs, which funds defendant was not entitled to receive; in violation of Title 18, United States Code, Section 641.

Specifically, in or about December 1989, defendant began receiving disability benefits from the Social Security Administration under the alias name of "James Alexander" and the social security number 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.

Previously, in approximately June 1968, defendant had fraudulently applied for a social security number from the Social Security Administration using the "James Alexander" alias. In the application, defendant falsely claimed that his name was James Alexander, that his date of birth was March 26, 1940, that his mother's name was Frances Smith, and that his father's name was Davis Alexander. He also falsely claimed that he had never previously applied for a social security number. Unaware of defendant's true identity, the Social Security Administration issued defendant the number 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 under the James Alexander alias.

The Social Security Administration granted defendant's application for benefits under the James Alexander alias and began making monthly disability benefit payments directed to "James Alexander" and received by defendant starting in December 1989, retroactive to February 1989. The Social Security Administration paid defendant, who was using the James Alexander alias, $138,443 in disability benefits from 1989 to 2007. Defendant knew that he was not entitled to receive these benefits.

In addition, in or about April 1990, defendant began receiving Supplemental Security Income benefits from the Social Security Administration under the alias name of "Jim Davis" and the social security number 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.

Previously, in approximately August 1970, defendant had fraudulently applied for a social security number from the Social Security Administration using the "Jim Davis" alias. Specifically, in the application, defendant falsely claimed that his name was Jim Davis, that his date of birth was March 15, 1936, that his mother's name was Pankie Gusery, and that his father's name was Frank Davis. Defendant also falsely claimed that he had not previously applied for a social security number. Unaware of defendant's true identity, the Social Security Administration issued defendant the number 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 under this alias.

The Social Security Administration granted defendant's application for benefits under the Jim Davis identity and began making monthly Supplemental Security Income benefit payments directed to "Jim Davis" and received by defendant starting in April 1990, retroactive to February 1990. The Social Security Administration paid defendant $101,143.79 from 1989 to 2007. Defendant knew that he was not entitled to receive these benefits.

In addition, in or about September 1990, defendant began receiving Supplemental Security Income benefits from the Social Security Administration under the name of "Benny Alexander" and the social security number 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. Defendant falsely certified that he was eligible to receive Supplemental Security income benefits, despite knowing that he was not eligible for those benefits because he was receiving multiple government benefits using different identities.

Unaware that defendant was receiving multiple benefits under different identities, and therefore was ineligible for receiving Supplemental Security Income benefits under the Benny Alexander identity, the Social Security Administration granted defendant's application under the Benny Alexander name and began making monthly Supplemental Security Income benefit payments directed to "Benny Alexander" and received by defendant starting in May, 1998. The Social Security Administration paid defendant $14,809 from 1998 to 2007. Defendant knew that he was not entitled to receive these benefits.

7. Defendant also acknowledges that for the purpose of computing his sentence under the Sentencing Guidelines, the following conduct, to which he stipulates, constitutes relevant conduct under Guideline §1B1.3:

From in or about March 1986 and continuing to in or about March, 2007, at Chicago, in the Northern District of Illinois, Eastern Division, defendant admits that he devised, intended to devise, and participated in a scheme and artifice to defraud and to obtain money from the Illinois Department of Public Aid by means of materially false and fraudulent pretenses, representations, promises, and material omissions, well-knowing at the time that the pretenses, representations, and promises were false when made.

Specifically, beginning on or about February 1986, defendant fraudulently received cash assistance, Food Stamp Benefits, and medical assistance from the Illinois Department of Public Aid under the alias name of "Jim Davis" and the social security number 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. From in or about January 1990 and continuing to in or about February, 2007, the

Illinois Department of Public Aid made Food Stamp Benefit payments directed to "James Alexander" in the total amount of $14,561, which defendant received; cash assistance payments in the total amount of $12,127.84, which he received; and medical assistance payments of $1,684.34, which he received. By being enrolled in these public assistance programs, defendant received benefits from the Illinois Department of Public Aid each month either via the mail or via a wire transmission. Defendant knew he was not entitled to receive any of these benefits.

Also, beginning on or about January 1990, defendant fraudulently received cash assistance, Food Stamp Benefits, and medical assistance from the Illinois Department of Public Aid under the alias name of "James Alexander" and the social security number 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. From in or about January 1990 continuing to in or about January 1999, the Illinois Department of Public Aid made Food Stamp Benefit payments directed to "James Alexander" in the total amount of $4,889, which defendant received; cash assistance payments in the total amount of $495, which he received; and medical assistance payments of $1,142.07, which he received. By being enrolled in these public assistance programs, defendant received benefits from the Illinois Department of Public Aid each month either via the mail or via a wire transmission. Defendant knew he was not entitled to receive any of these benefits.

Additionally, beginning in or about January 1999, defendant fraudulently received Food Stamp Benefits from the Illinois Department of Public Aid under the name "Benny

Alexander" and the social security number 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. From in or about August 1999 continuing to in or about March 2007, the Illinois Department of Public Aid made Food Stamp Benefit payments directed to "Benny Alexander" in the total amount of $9,182, which defendant received. By being enrolled in Food Stamp Program, defendant received benefits from the Illinois Department of Public Aid each month either via the mail or, later on in that time period, via a wire transmission. Defendant was not entitled to receive these benefits because the income he was receiving at the time was above the gross income standards for eligibility for receipt of Public Aid. Defendant knew he was not entitled to receive any of these benefits.

### Maximum Statutory Penalties

8. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

    a. A maximum sentence of 10 years' imprisonment. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

    b. Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court. The Court also may order restitution to any persons as agreed by the parties.

c.      In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

9.      Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.      **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guidelines Manual.

b.      **Offense Level Calculations.**

i.      The base offense level for the charge in the information is 6, pursuant to Guideline §2.B1.1(a)(2);

ii.     A twelve-level increase is appropriate pursuant to Guideline §2B1.1(b)(1)(G), because defendant's conduct for the count of conviction and relevant conduct resulted in a loss of more than $200,000 and less than $400,000.

8

    iii. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline §3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

    iv. In accord with Guideline §3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

  c. **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

  d. **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 15, which,

when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 18 to 24 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

  e. Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

  f. Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant

shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

11. Each party is free to recommend whatever sentence it deems appropriate.

12. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13. Regarding restitution, the parties acknowledge that the total amount of restitution owed to Social Security Administration is $254,395 [handwritten: 5.7 5], minus any credit for funds repaid prior to sentencing, and that pursuant to Title 18, United States Code, § 3663A, the Court must order defendant to make full restitution in the amount outstanding at the time of sentencing. Pursuant to Title 18, United States Code, §§ 3663(a)(3) and 3664, defendant also agrees to pay additional restitution, arising from the relevant conduct set forth above, totaling $44,081, to the Illinois Department of Public Aid. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing.

14. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

## Presentence Investigation Report/Post-Sentence Supervision

15. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

16. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of his sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

17. For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed

subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

18. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 05 CR 518.

19. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

20. Defendant understands that nothing in this Plea Agreement shall limit the Internal Revenue Service (IRS) in its collection of any taxes, interest or penalties from defendant and his spouse.

## Waiver of Rights

21. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a. **Right to be charged by indictment.** Defendant understands that he has a right to have the charge prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

    b. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charge against him, and if he does, he would have the right to a public and speedy trial.

        i. The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

        ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where

actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

   iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

   iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

   v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

   vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

        vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

    c.    **Waiver of appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and only may appeal the validity of this plea of guilty or the sentence.

    d.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights. Defendant understands that he has the right to have the criminal charge in the information brought within five years of the last of the alleged acts constituting the specified violation. By signing this document, defendant knowingly waives any right to have the charge in the information brought against him within the period established by the statute of limitations. Defendant also knowingly waives any defense or claim based upon the statute of limitations or upon the timeliness with which the charge in the information was brought.

## Other Terms

22.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

23.     Defendant agrees to cooperate with the IRS in any tax examination or audit of defendant and his spouse which directly or indirectly relates to or arises out of the course of conduct which defendant has acknowledged in this Plea Agreement, by transmitting to the IRS original records or copies thereof, and any additional books and records which the IRS may request. Nothing in this paragraph precludes defendant from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

## Conclusion

24.     Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

25.     Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in

accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

26. Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

27. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

28. Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 7/22/08

_____    _____
PATRICK J. FITZGERALD          BENNY ALEXANDER
United States Attorney         Defendant

_____    _____
KRUTI TRIVEDI                  DANIEL HESSLER
Assistant U.S. Attorney        Attorney for Defendant